UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAYMOND ORRAND, *et al.*,

        Plaintiffs,

                                  Case No. 2:12-cv-1131
                                  JUDGE SARGUS
   v.                                Magistrate Judge Kemp

SCASSA ASPHALT, INC.,

        Defendant.


<u>**OPINION AND ORDER**</u>

    This case is before the Court on Plaintiffs' motion for summary judgment. (Doc. 23). For the reasons that follow, Plaintiffs' motion is **GRANTED**.

## I.    FACTS IN THE SUMMARY JUDGMENT RECORD

    This is a lawsuit against Defendant, Scassa Asphalt, Inc., (Scassa) for unpaid contributions to a number of labor union funds. Plaintiffs bring suit through Raymond Orrand, Administrator for the Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Trustees of the Ohio Operating Engineers Pension Fund, the Trustees of the Ohio Operating Engineers Apprenticeship Fund, and the Trustees for the Ohio Operating Engineers Education and Safety Fund. (*See* Doc. 23, Ex. A, Orrand Aff. at ¶ 1). Plaintiffs claim, through affidavits of Orrand, Douglas Baker (Auditor of the Ohio Operating Engineers Fringe Benefits Programs), and Richard Dalton (President of the International Union of Operating Engineers, Local 18) that Scassa should have, but did not, make contributions to the various union funds from February 1, 2009 through September 30, 2013. (*See, e.g.*, Doc. 23, Ex. D, Baker 1st Aff. at ¶¶ 13-24; Doc. 31, Ex. 2, Baker 2d. Aff. at ¶¶ 3-7; Doc. 31, Ex. 1, Dalton Aff.; Doc. 23, Ex. A, Orrand Aff.).

According to the affidavit of Nick Scassa, President of Scassa Asphalt, in February 2009, Scassa Asphalt was a small company. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 2). Most of the work (paving jobs for small municipalities) was performed by Nick Scassa personally, or his brother, Ettore Scassa. *Id.* In early February 2009, a representative of the International Union of Operating Engineers, Local 18, (Local 18) approached Scassa. *Id.* at ¶ 3. Scassa had been, at the time, experiencing interference from a local laborers' union. *Id.* The Local 18 representative said that if Scassa joined Local 18, it would no longer have problems with the local laborers' union. *Id.*

Local 18 presented Scassa with two agreement pages. *Id.* at ¶ 4. The first page is the short-form agreement between Scassa and Local 18. (Doc. 30, Ex. 1, sub-Ex A., Scassa Agmnts. at 1). With regard to Scassa's duty to pay into union funds, it says this:

> 3) The Company is not represented by any employer bargaining unit nor has any employer bargaining unit authority to act as an agent for the Company; however, the Company agrees to adopt and accept all the terms, wage rates and conditions of the 2007-2010 Ohio Highway Heavy Agreement (hereafter "The Agreement") except as modified herein. The Company further agrees to make contributions to the Health and Welfare Fund, Pension Fund, Apprenticeship Fund and Safety Training and Educational Trust Fund as outlined in said Ohio Highway Heavy Agreement.

*Id.* Scassa was not provided with, and apparently did not ask for, a copy of the Ohio Highway Heavy Agreement. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 4). Nonetheless, Scassa, in order to avoid further trouble with the local laborers' union, executed the form on February 6, 2009. (Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1). Scassa also executed a bonding agreement recognizing that it was bound to make contributions to the trust funds and contracting with a bonding company to provide a bond of $50,000 should it fail to do so. (Doc. 30, Ex. 1, sub-Ex. A, Scassa

Agmnts. at 2).[1]  Nearly simultaneously, on February 7, 2009, Scassa executed another form stating that it would pay a minimum of 2000 hours per year to the Ohio Operating Engineers Fringe Benefit Program "as stipulated in the collective bargaining agreement" on behalf of Nick Scassa. (Doc. 30, Ex. 1, sub-Ex. B, Scassa Hrs. Agmnt.).

In mid-February 2009, shortly after Scassa executed the forms provided by Local 18, members of the local laborers' union again interfered in Scassa's business. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 6).  They arrived at a job site in Massillon, Ohio, and one of them physically assaulted a subcontractor. *Id.*  Nick Scassa contacted the Local 18 representative and asked for help but Local 18 declined to intervene to protect Scassa from the local laborers' union. *Id.* at ¶ 7.  Nick Scassa then verbally informed the Local 18 representative that Scassa Asphalt was terminating its relationship with Local 18. *Id.*; (*see also* Doc. 31, Ex. 1, Dalton Aff. at ¶¶ 8-9). However, the short-form agreement that Scassa had signed contained the following language:

> This Agreement shall be effective as of the date set forth and shall remain in full force and effect unless modified by mutual agreement of the parties until expressly terminated by notice in writing from one party to the other party at least sixty (60) days prior to its anniversary date.

(Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1).

After approximately a year, in February 2010, Scassa received a letter from Local 18. (Doc. 30, Ex. 1, sub-Ex. C, Modification Ltr.).  The letter was to "notify [Scassa] that the Ohio Highway Heavy . . . Agreement[], between your company or association and the International Union of Operating Engineers, Local 18 expire[s] April 30, 2010." *Id.*  In the next two paragraphs the letter went on to state its goal:

> This is to advise you of our desire to modify, amend, and/or negotiate a new agreement.

---

[1] Defendant also filed another (and more legible) copy of this agreement. (Doc. 34, Ex. A, Scassa Agmnts. at 2).

It is also our desire to open negotiations for a new agreement covering wages, hours and conditions of employment.

*Id.* Scassa, already considering the relationship orally terminated, and not wishing to begin anew, made no response to the letter. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 8).

On October 24, 2013, agents for Local 18 conducted audits – one assuming that Scassa was required to pay 2000 hours per year in contributions, regardless of whether the business actually worked 2000 hours a year or not, and one assuming that Scassa Asphalt only owed contributions for those hours actually worked by its three employees (Nick Scassa, Ettore Scassa, and S.M. Strab). (*Compare* Doc. 23, Ex. D, Baker 1st Aff. *with* Doc. 31, Ex. 2, Baker 2d Aff.). The specific figures generated by these audits, under the assumptions detailed above, are not contested by Scassa (though Scassa does contest the notion that it had a duty to pay) and are summarized as follows:

| | 2000 Hours Assumption | Actual Hours Assumption |
|---|---|---|
| **Health & Welfare Plan** | $76,450.89 | $34,744.41 |
| **Pension Fund** | $58,064.84 | $23,968.01 |
| **Apprenticeship Fund** | $6,381.55 | $2,750.81 |
| **Education & Safety Fund** | $458.90 | $209.60 |
| **Total** | $141,356.18 | $61,672.83 |

(*Compare* Doc. 23, Ex. D, Baker 1st Aff. at ¶ 24 *with* Doc. 31, Ex. 2, Baker 2d Aff. at ¶ 7). Scassa, moreover, specifically admits that it has made no payments to most of the funds and the audits by Plaintiffs confirm that Scassa has, in fact, made no payments to any of the funds. (*Compare* Doc. 31, Ex. 2, sub-Ex. A, Audit Docs. at 1-9 *with* Doc. 31, Ex. 2, Baker 2d Aff. at ¶ 7 (unpaid contribution hours equal total hours – 5240); Doc. 16, Answer to Amend. Compl. at ¶¶ 9, 13, 18 (admitting no payments)).  In addition to the past-due sums, Local 18 asserts an entitlement to interest on delinquent contributions at a rate of 18% per annum, calculated from

the date the alleged delinquency was discovered (the date of the audit), as well as litigation fees and costs. (Doc. 23, Ex. D, Baker 1st Aff. at ¶ 5; Doc. 13, Amend. Compl. *in passim*).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

## III.    DISCUSSION

Plaintiffs argue that they are entitled to summary judgment because Scassa cannot dispute the figures revealed by the audit. (Doc. 23, Mot. for SMJ at 4 & *in passim*). Scassa resists,

arguing that there is a genuine issue of fact as to what the extent of its obligation to pay was. (Doc. 30, Re. in Opp. to SMJ at 6).

## A. The Contractual Relationship Between Local 18 and Scassa

The essential questions here concern whether Local 18 and Scassa reached a valid contract to require Scassa to pay into the funds and if so – what the extent of it was. These are questions of contract law.

### 1. Applicable Law

Somewhat atypically in this contract case, jurisdiction over this matter does not arise from diversity, but from the federal laws governing actions for violations of collective bargaining agreements. *See, e.g.*, 29 U.S.C. §§ 185, 1132, 1145 (2012). Accordingly, the *Erie* doctrine is not invoked and there is no mandate from *Erie* and progeny that this Court use the contract law of Ohio. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). However, in a case of similar posture to this, the Sixth Circuit remarked:

> Even though essentially contractual in nature, the disputed retiree benefits in this case nevertheless arise under a collective bargaining agreement and may be, as here, the subject of a federal suit under § 301 of the National Labor Relations Act. Under these circumstances, it is clear that it is federal substantive law which controls resolution of the contractual dispute. [*Textile Workers of Am. v.* ]*Lincoln Mills*, 353 U.S. [448,] 456-57 [(1957)]. In the absence of controlling federal law principles, however, we may look for guidance to general common law principles, including the substantive law of the state in which the contract arose. These borrowed principles in this context, of course, are "absorbed as federal law" and become the federal common law of labor disputes. *See id.* at 457.

*Int'l Union v. Yard-Man*, 716 F.2d 1476, 1487 (6th Cir. 1983). Decisions by this Court, among others, have referred to Ohio contract law when articulating federal common law contract principles.

> When interpreting ERISA plans, federal courts apply "general rules" of contract law as part of the federal common law. *See, e.g.*, *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In developing such federal common law, a federal court may take

direction from the law of the state in which it sits, or it may generally review law on the issue and adopt a federal rule. *Regents of the Univ. of Michigan v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997).

*Deal v. Kegler Brown Hill & Ritter Co.*, 551 F. Supp. 2d 694, 702-03 (S.D. Ohio 2008).

*Deal* went on to note, "Under Ohio law, a valid contract consists of an offer, acceptance, and consideration." *Deal*, 551 F. Supp. 2d at 703 (citing *Tersigni v. Gen. Tire, Inc.*, 633 N.E.2d 1140, 1142 (1993)). These principles seem to this Court to be in accord with the general consensus among lawyers as to what forms a contract in both federal and state courts. *See, e.g.*, Restatement (Second) of Contracts chs. 3-4 (1981) (chapters relating to formation requirements). Thus, the Court shall borrow from the Ohio state common law of contracts as it seems to be in accord with the federal common law.

### 2. ERISA Preemption

Plaintiffs take the position that "Scassa Asphalt, Inc. is a party to a collective-bargaining agreements[sic] . . . which obligate[sic] Defendant to make contributions to Plaintiffs' Trust Funds . . . ." (Doc. 23, Ex. 1, Orrand Aff. at ¶ 2). Based on that allegation, Plaintiffs assert a right to unpaid contributions,[2] plus interest, and attorneys' fees/costs. (Doc. 23, Ex. D, Baker 1st Aff. at ¶¶ 5, 24; Doc. 31, Ex. 2, Baker 2d Aff. at ¶ 7; Doc. 23, Mot. for SMJ at 3). However, Scassa presents evidence, in the form of an affidavit by its president, that Local 18 did not provide or show a copy of the full agreement to Scassa but, instead, only gave it short-form agreements to sign. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 4). Moreover, avers Nick Scassa, Local 18 said that the contract would provide solely for his retirement and that if he joined Local 18, Scassa would have no further problems with the local laborer's union. (Doc. 30, Ex. 1, Scassa

---

[2] Either $61,672.83 or $141,356.18, depending on whether the calculation is accomplished by hours actually worked (yet unpaid) or assuming a minimum of 2000 hours per year regardless of the number of hours actually worked. (*Compare* Doc. 23, Ex. D, Baker 1st Aff. at ¶ 24 *with* Doc. 31, Ex. 2, Baker 2d Aff. at ¶ 7).

Aff. at ¶¶ 3, 5). Or, to put it another way, Scassa claims that it never understood what it was agreeing to and was induced to sign by false promises and representations about the character of the agreement.

In opposing Scassa, Plaintiffs cite *Central States v. Gerber Truck Service, Inc.*, for the proposition that contract law defenses like fraud in the inducement are preempted in ERISA actions. 870 F.2d 1148, 1154 (7th Cir. 1989); (Doc. 31, D. Reply in Supp. of SMJ at 5). This Court has previously agreed with that general proposition:

> [U]nder . . . ERISA, if an employer raises a defense to its obligation to contribute based upon a defect in the formation of the agreement, it remains obligated to its promise to pay the employee benefit plan trustees. Fraud in the inducement, which is a contract formation defense, is not a valid defense to the pension fund trustees' suit to recover delinquent contributions from an employer under a contract obligation.

*Noe v. R.D. Jones, Excavating, Inc.*, 787 F. Supp. 759, 763-64 (S.D. Ohio 1992) (citations omitted). Moreover, the Sixth Circuit has explained the reason union lawsuits for delinquent contributions enjoy federal attention and protection from most common contract defenses:

> Multi-employer pension and welfare plans would be in a bind if . . . flaws in the formation cut off third-party claims. Plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize -- perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. Costs of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials -- conversations to which plans are not privy -- may be especially costly, and hold out especially great prospects of coming away empty-handed . . . .

*Central States, SE & SW Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460-61 (6th Cir. 1989) (citations omitted) (quoting *Gerber*, 870 F.2d at 1151) (citing *Robbins v. Lynch*, 836 F.2d

330, 333 (7th Cir. 1988)). Thus, any claims by Scassa that there was a failure of consideration or that they were induced to sign the agreement by false promises, are preempted in order to protect the integrity of the larger system.

True, the preemption principal and reasoning behind it are not without some minor limits. Fraud in the execution can render a contract void *ab initio* and thereby avoid the preemption issue. *See Bds. of Trs. v. Burton Aluminum Prods., Inc.*, 875 F.2d 861, 1989 U.S. App. LEXIS 14457, *21-22[3] (6th Cir. 1989) (accepting fraud in the execution as a defense in collective bargaining cases but rejecting fraud in the inducement). However, fraud in the execution is no normal contract defense – it is the difficult proof that the signer of a contract was not cognizant of the basic nature of the bargain. "A classic example of fraud in [the execution[4]] is that of a celebrity who, while signing autographs, unknowingly signs a promissory note slipped in among the papers." *Harkrider v. Posey*, 24 P.3d 821, 827 (Okla. 2000) (citing *George v. Tate*, 102 U.S. 564, 570 (1880)); *see also, e.g., Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir. 1997). As the Sixth Circuit put it, "[f]raud in the execution causes a party to believe that the agreement it signs has essential terms different from those that actually appear in the contract." *Electric Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 656 (6th Cir. 2000) (citing *Hetchkop*, 116 F.3d at 32). In the Sixth Circuit, to demonstrate the excusable ignorance necessary to maintain a fraud-in-the-execution theory, the theorizing party bears the burden to demonstrate that it fulfilled its "basic responsibility . . . to review a document before signing it." *Gary's Electric Serv. Co.*, 227 F.3d at 657 (citing *Hetchkop*, 116 F.3d at 34).

Thus, all of Scassa's arguments based on defenses to contract fail. Only if fraud in the execution occurred will Scassa avoid liability. Thus, the question is whether the circumstances

---

[3] Note: Federal reporter page numbers are missing in the electronic source; thus, LEXIS pagination is used.
[4] In the original quote, the Oklahoma Supreme Court uses the Latin term, "fraud in *esse contractus*."

show that Scassa did not understand the essential terms of the agreement and whether, if it did

not, its ignorance in this regard is excusable.

### 3. Fraud in the Execution

Scassa presents an affidavit by its president to the effect that Local 18 did not provide or

show a copy of the full agreement to Scassa but, instead, only gave it short-form agreements to

sign. (Doc. 30, Ex. 1, Scassa Aff. at ¶ 4).  However, the relevant short-form agreement, which

Scassa did receive and sign, set forth the requirement of contributions:

> 3)  The Company is not represented by any employer bargaining unit nor has any
> employer bargaining unit authority to act as an agent for the Company; however,
> the Company agrees to adopt and accept all the terms, wage rates and conditions
> of the 2007-2010 Ohio Highway Heavy Agreement (hereafter "The Agreement")
> except as modified herein.  The Company further agrees to make contributions to
> the Health and Welfare Fund, Pension Fund, Apprenticeship Fund and Safety
> Training and Educational Trust Fund as outlined in said Ohio Highway Heavy
> Agreement.

(Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1). The same short-form agreement also states, "5)

A copy of the 2007-2010 Ohio Highway Heavy Agreement is attached hereto and made a part

hereof except as modified herein." *Id.*  Moreover, that was not the only agreement that Scassa

signed.   Roughly contemporaneous to signing the short-form agreement, Scassa executed a

bonding agreement, again recognizing that it was bound to make contributions to the trust fund

and contracting with a bonding company to provide a bond of $50,000 against the possibility that

it should fail to do so. *Id.* at 2.[5]  Finally, the day after it executed the first short-form agreement,

Scassa executed an agreement "to pay a minimum of 2000 hours per year to the Ohio Operating

Engineers Fringe Benefit Program . . . ." (Doc. 30, Ex. 1, sub-Ex. B, Scassa Hrs. Agmnt.).

"Payments," the hours agreement continued, "will be made on a weekly or monthly basis as

stipulated in the collective bargaining agreement.  This payment will be contributing to the Ohio

---

[5] Defendant also filed another (and more legible) copy of this agreement. (Doc. 34, Ex. A, Scassa Agmnts. at 2).

Operating Engineers Health & Welfare, Pension, Apprenticeship, and Education and Safety funds and plans." *Id.*

According to Scassa's president, despite what all three agreements say, Scassa did not receive a copy of the Ohio Highway Heavy Agreement and did not understand itself to be bound to make payments as set forth therein. (Doc. 30, Ex. 1, Scassa Aff. at ¶¶ 3-5).   When deciding whether to grant summary judgment against Scassa, Scassa's evidence should be credited and reasonable inferences drawn in its favor. *See, e.g., Matsushita*, 475 U.S. at 587.   Thus, this Court assumes that Scassa did not receive a copy of the full agreement or fully understand its obligations.   However, even with that assumption in hand, Scassa was not relieved of its "basic responsibility . . . to review a document before signing it." *Gary's Electric Serv. Co.*, 227 F.3d at 657 (citing *Hetchkop*, 116 F.3d at 34).   Had Scassa reviewed the three contracts that it signed it could not have failed to understand that it was agreeing to join the union, Local 18, to pay into various funds, and to be bound by the larger agreement that was incorporated and referenced in every document that it signed.

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.  If this were permitted, contracts would not be worth the paper on which they are written.  But such is not the law.  A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*McAdams v. McAdams*, 88 N.E. 542, 544 (Ohio 1909) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)).

This is not a case of fraud in the execution and, though it might meet the standard for fraud in the inducement if Scassa's evidence is credited, fraud in the inducement is not a valid defense in an ERISA action.

### 4. Early Termination

Scassa next argues that if there was an agreement, it was orally terminated when Nick Scassa contacted the Local 18 representative in mid-February 2009, and told him that "Scassa Asphalt had no desire to remain in the Union and was terminating its relationship with the Union." (Doc. 30, Re. in Opp. to SMJ at 6; Doc. 30, Ex. 1, Scassa Aff. at ¶ 7).  However, "[t]he time and manner of exercising a power of termination [of a contract] may be specified in the contract; *in such case an attempt to exercise it otherwise will be ineffective*." *Trustees of Asbestos Workers Local Union No. 25 v. Metro Insulators, Inc.*, 902 F.2d 1569; 1990 U.S. App. LEXIS 8437, *10[6] (6th Cir. 1990) (emphasis original) (citations omitted) (internal quotation marks omitted).  True, the Sixth Circuit has recently taken a more "moderate" view than other courts in deciding whether termination is an effective defense to an ERISA action. *See, e.g.*, *Laborers Pension Trust Fund v. Interior Exterior Specialists Constr. Group, Inc.*, 394 F. App'x 285, 289-91 (6th Cir. 2010).  However even under the moderate view, a "'superficial inquiry' or 'cursory review' into the record [must] establish[] that Defendant terminated its collective bargaining agreement in compliance with the standards adopted in the Sixth Circuit.  If a superficial inquiry into the record fails to show clear and explicit termination of the contract, Defendant's termination defense will fail as a matter of law." *Bricklayers Pension Trust Fund v. Metro Joint Sealants*, LLC, No. 08-cv-1520, 2010 U.S. Dist. LEXIS 103647, *31 (E.D. Mich. Sept. 28, 2010) (citing *Interior Exterior Specialists Constr. Group, Inc.*, 394 F. App'x at 289-90; *La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 409 (5th Cir. 1998)).

In this case, the short-form agreement provided:

---

[6] Note: Federal reporter page numbers are missing in the electronic source; thus, LEXIS pagination is used.

> This Agreement shall be effective as of the date set forth and shall remain in full force and effect unless modified by mutual agreement of the parties until expressly terminated by notice in writing from one party to the other party at least sixty (60) days prior to its anniversary date.

(Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1). Scassa, it is undisputed, never tendered the requisite written notice. (Doc. 30, Re. in Opp. to SMJ at 6; Doc. 30, Ex. 1, Scassa Aff. at ¶ 7; Doc. 31, Ex. 1, Dalton Aff. at ¶¶ 8-9). Thus, a cursory review of the record reveals that the agreement, by its own terms, was not terminated through Scassa's oral termination notice.

As an alternative, Scassa argues that the modification letter sent by Local 18 in mid-February, 2010, terminated the contract. (Doc. 30, Re. in Opp. to SMJ at 6; Doc. 30, Ex. 1, Scassa Aff. at ¶ 8). However, "[a] notice to terminate must be clear and explicit. . . . A notice of modification is not a notice of termination and does not affect termination of the contract." *Chattanooga Mailers Union v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1312 (6th Cir. 1975) (quoting *Int'l Union of Operating Engineers, Local No. 181 v. Dahlem Constr. Co.*, 193 F.2d 470, 475 (6th Cir. 1951)); (*see also* Doc. 31, Ex. 1, Dalton Aff. at ¶¶ 5-9). Local 18's letter to Scassa, by its very terms, was not a termination but a notice of intent to modify:

> The purpose of this letter is to officially notify you that the Ohio Highway Heavy . . . Agreement[] between your company . . . and . . . Local 18 expire[s] April 30, 2010.
>
> This is to advise you of our desire to modify, amend, and/or negotiate a new agreement.
>
> It is also our desire to open negotiations for a new agreement covering wages, hours and conditions of employment.
>
> . . . .
>
> Please acknowledge receipt of this letter and advise.

(Doc. 30, Ex. 1, sub-Ex. C, Modification Ltr.). Scassa's argument, that notification of an expiration is tantamount to a notification that a contract will terminate is certainly not without logical appeal. However, taken as a whole, the letter which, among other things, requests a

13

response and negotiations, is indicative of an intent that a relationship between the parties continue – not terminate. Even drawing all reasonable inferences in favor of Scassa, this letter cannot be construed as a termination under the terms of the contract.[7]

The agreement between Scassa and Local 18 was not terminated by either Local 18's modification letter or Scassa's oral notice of termination. Since the agreement only terminates upon written termination by one party to another, it has never terminated. (Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1 (evergreen clause)); *see also, e.g., Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 968 (6th Cir. 1998) (citing *E. Enters. v. Apfel*, 524 U.S. 498, 510-11 (1998); *Int'l Union of Operating Eng'rs, Local 369 v. Office & Prof'l Emps. Union, Local 367*, No. 94-5786, 1995 U.S. App. LEXIS 36178 (6th Cir. Sept. 7, 1995); *Barrick Gold Exploration, Inc. v. Hudson*, 823 F. Supp. 1395, 1405 (S.D. Ohio 1993)) ("evergreen clauses are legally valid").

### 5. Failure of Consideration

Scassa finally argues that, even if it is liable and must pay some moneys into the funds, the purported promise to pay 2000 hours per year fails for want of consideration and thus the actual hours audit should be used to determine the amount owed. (Doc. 30, Re. in Opp. to SMJ at 5-6). However, Scassa's argument on this point does not take into account the fact, discussed above, that traditional defenses to contracts are preempted in an ERISA situation. *Behnke, Inc.*, 883 F.2d at 460-61; *see also, supra* pp. 8-9. The hours agreement, which controls part of Scassa's "obligation to contribute . . ." to the funds cannot be challenged on traditional contract defenses. *Noe*, 787 F. Supp. at 763-64. Thus, the 2000-hours Agreement is valid and the 2000-

---

[7] Moreover, though the Highway Heavy Agreement was set to expire in April, the short-form agreement that Scassa signed, by its very terms, never expires except upon written termination. (Doc. 30, Ex. 1, sub-Ex. A, Scassa Agmnts. at 1) ("This Agreement . . . shall remain in full force and effect . . . until expressly terminated by notice in writing . . .").

14

hour-assuming audit should be used when determining the amount owed. (*See* Doc. 23, Ex. D, Baker 1st Aff. *in passim*).

## IV.    CONCLUSION

Plaintiffs' motion for summary judgment (Doc. 23) is **GRANTED**.  The Clerk is directed to **ENTER JUDGMENT** in favor of Plaintiffs and against Defendant for the following:

1.    Delinquent fringe benefit contributions for the period February 1, 2009 to October 1, 2013 in the amount of $141,356.18 under 29 U.S.C. § 1132(g)(2)(A);

2.    Interest under 29 U.S.C. § 1132(g)(2)(B) in the amount of $61,061.08 calculated to November 15, 2013, plus $69.71 per day thereafter;

3.    Statutory interest under 29 U.S.C. § 1132(g)(2)(C) in the amount of $61,061.08 calculated to November 15, 2013, plus $69.71 per day thereafter; and

4.    Court costs under 29 U.S.C. § 1132(g)(2)(D) in the amount of $350.00.

If Plaintiffs wish to pursue their request for attorneys' fees, they shall file an appropriate motion within fourteen days of the date of this Opinion and Order.

**IT IS SO ORDERED.**

_____8 - 28 -2014_____
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15